**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| In re: | CHAPTER 11 |
| Beato Auto Sales, Inc., | Case Number 23-10064-BAH |
|       Debtor | |

**DEBTOR'S *EX PARTE* MOTION FOR**
**INTERIM AND FINAL AUTHORITY TO USE CASH COLLATERAL**

The debtor-in-possession, Beato Auto Sales, Inc. (the "Debtor") respectfully moves pursuant to Sections 363(c)(2)(B), 105(a), 361, and 362 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 4001-2, for an order authorizing the limited use of cash collateral to pay the costs and expenses incurred by the Debtor in the ordinary course of business on a limited interim basis to avoid immediate and irreparable harm pending a final hearing at least 14 days, but not more than 30 days, after the filing of the Cash Collateral Motion; authorizing the Debtor to use cash collateral on a final basis during the period between the week beginning February 18, 2023 through the week beginning May 13, 2023 (the "Use Period") or until the date on which the Court enters an order revoking the Debtor's right to use Cash Collateral.

The Debtor has 5 creditors with secured claims in the Debtor's used car inventory. The remaining secured creditors are the SBA and two so-called merchant cash advance lenders who have liens in Debtor's future receipts. They have not assented to the relief requested herein but as described below, will not suffer an impairment of their collateral position as a result of the Debtor's operations.

1

As shown on the budget attached as Exhibit A (the "Budget"), use of the cash collateral is necessary to operate the Debtor's business through confirmation of a subchapter V chapter 11 plan of reorganization to: (i) make payroll to Debtor's employees essential to its continued operations; (ii) pay insurance premiums as necessary to ensure continuation of the necessary insurance coverage, (iii) pay vendors, suppliers and utilities for ongoing supplies and services; (iv) pay other ordinary and necessary expenses to prevent an immediate cessation of the business; and (v) pay the Debtor's professionals and the fees of the United States Trustee.

The Debtor will require additional borrowing for the continuation of its business. As shown in the budget, during the initial term of the use period it will sell its used car inventory and satisfy the liens on the automobiles with creditors who have specific liens on those titles. The Debtor will either hand-deliver or wire funds from the sales of the used car inventory to its respective floor plan lienholder in exchange for the title. Three of the floor plan lenders have indicated such a process was satisfactory. The profits from each sale, together with the revenue from its service business will fund its ongoing operations.

Since the Debtor's lines of credit are, at least for now, frozen, the Debtor will not be able to rebuild its inventory supply until it either negotiates for re-opened lines with one or more of its floor plan lenders, or obtains funding from a third party. It is in negotiations for both solutions now and will file appropriate motions for post-petition borrowing when it is successful. If the Debtor is unable to find replacement lending, it will convert the case to chapter 7. In further support of this Motion the Debtor hereby states as follows:

**I.       Factual Background**

1.     On February 13, 2023 (the "Petition Date") the Debtor filed a voluntary petition under subchapter V of Title 11, Chapter 11 of the Bankruptcy Code in the

Bankruptcy Court for the District of New Hampshire.

2. The Debtor filed this case to restructure its secured and unsecured debts through a plan of reorganization.

3. The Debtor is a New Hampshire corporation formed on June 21, 2017. The Debtor conducts its business at three locations, one in Nashua and two in Derry, all of which are rented. The Debtor sell and services used cars which it purchases mostly at auction. Historically it has used floor plan lending to purchase its inventory and gives liens on the titles of the cars it purchase. Those liens are satisfied when the Debtor sells the cars, usually at a profit.

4. The Debtor was forced to seek relief before this Court because of overleverage with respect to three so-called merchant service loans and other significant unsecured debt.

5. The Debtor filed this case primarily for the purpose of restructuring it secured and unsecured debt through a plan of reorganization, which should be reasonably straightforward.

6. The Debtor is not aware of any Chapter 5 claims in this case.

7. The Debtor's business is a cash business and it typically has no accounts receivable: the Debtor is paid cash for both its cars and service when it sells the former or provides services to its customers.

II **Jurisdiction and Venue**

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).

3

10. No trustee or examiner has been appointed in the Debtor's case, other than the statutory Subchapter V trustee.

### III. The Debtor's Need for the Use of Cash Collateral and Protection of Same

11. Without the ability to sell its inventory and to use the profits from the sales and service business, the Debtor will be unable to pay its modest payroll, utilities and suppliers, insurance premiums, and other ordinary and necessary operating expenses. This would cause the Debtor to abruptly cease operations because without these critical supplies and services the Debtor would not be able to pay its employees. Each sale will also reduce the amount of its secured debt because Debtor will not be purchasing new inventory, at least in the short run.

12. The Debtor, accordingly, requests authority to use its secured creditors' collateral as shown in the Budget at Exhibit A for the Use Period. During the Use Period, the Debtor intends to: (i) continue selling automobiles and providing service to its service customers; (ii) continue to make payroll and to pay its necessary suppliers, utilities, insurance premiums and service providers as shown on Exhibit A; (iii) and pay its professionals according to Exhibit A (upon approval by this Court of appropriate fee applications). As provided in the Budget, the Debtor seeks authorization to use all cash on hand plus all profits from the sale of cars after payment of their respective liens in the ordinary course of its business through the Use Period. Attached as Exhibit B is a schedule of Debtor's secured creditors together with amounts they are owed. This schedule shows secured debts totaling $2,068,197.00.

13. Allowing the Debtor to continue to use its cash collateral, and therefore, operate in the ordinary course is in the best interest of the Debtor, its employees and its customers and will preserve the value of the estate for the benefit of creditors.

14. Such interim relief is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

15. As noted in the budget, during the first Use Period the Debtor will not replace its auto inventory, but will sell approximately 10 cars per week to fund it operations. Each car sold will generate a profit and also pay down the secured debt of the floor plan lender that has a lien on the title. Because the Debtor's cash position improves over the Use Period, none of the secured creditors are harmed by its ongoing operation.

16. If the Debtor cannot secure replacement floor plan financing during the Use Period, and have such loan(s) approved by this Court, its business will necessarily terminate once its inventory is sold, and this case will convert to a case under Chapter 7 or be dismissed, whichever is in the best interest of creditors at the time. The success of the Debtor restructuring relies entirely on such financing.

17. The Debtor proposes and believes that the cash collateral will only diminish to the extent its secured floor plan debt reduces during the Use Period. The Debtor's other assets, such as its lifts, tools, furniture fixture and equipment, and cash, do not diminish during the Use Period, so Debtor's other secured creditors are not harmed nor is their collateral reduced.

18. The Debtor believes its limited use of cash collateral during the Use Period will permit it to maintain essential business operations, thereby preserving the value of the estate, until confirmation of a plan of reorganization. The Debtor owed no payroll to its employees on the Petition Date.

19. During the Use Period the Debtor will pay amounts accruing to the Chapter V Trustee to the undersigned to be held in escrow pending his application for fees.

**IV.    Legal Authority for Use of Cash Collateral**

20. The use of cash collateral is conditioned on adequate protection of the lender in its cash collateral. Adequate protection is a flexible concept that requires a court to make decisions

on a case-by-case basis. *In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass, 1985).

21. The types of adequate protection available to protect a secured creditor whose cash collateral is going to be used by a debtor pursuant to §363(c)(2)(B) are enumerated in §361 of the Bankruptcy Code, as well as by case law. That section envisions adequate protection to be provided either by cash payments, replacement liens, or other relief that will result in the realization by the secured creditor of the indubitable equivalent of the secured creditor's interest in such property. *See In re: Isaacson Steel* (Bankr.D.N.H. 2013) *citing Baybank-Middlesex v. Ralar Distribs* (*In re Ralar Distribs., Inc.*), 182 B.R. 81, 85 (D. Mass. 1995). In each instance, the focus of the Bankruptcy Code is on making sure that any decrease in the value of the collateral during the period involved is adequately protected.

22. Since the Debtor intends to sell its used car inventory in the normal course of its business operations during the Use Period and correspondingly reduce its secured debt, but not reduce either its cash or other assets, none of its secured creditors are harmed during the Use Period.

**IV. Notice**

23. In accordance with the requirements of LBR 4001-2(b) relating to the interim use of cash collateral, the Debtor provides the following information:

    a. The names and addresses of all creditors holding a secured interest in the cash collateral, and their attorneys if known:

Automotive Finance Corporation
c/o Jacobson Hile Kight, LLC
Attn: Andrew T. Kight
108 E. 9th St.
Indianapolis, IN 46202

XL Funding

6

400 Charter Way
North Billerica MA 01862

Lendbuzz
9 Turnpike Road
Ipswich MA 01938

Shamrock Finance
9 Turnpike Road
Ipswich MA 01938

NextGear
11799 North College Avenue
Carmel IN 46032

Samson Funding
17 State St.
New York NY 10004

Newtek Small Business Finance Inc.
1981 Marcus Avenue Suite 130
Lake Success NY 11042

Small Business Administration
409 3rd St SW.
Washington DC 20416

   b. The efforts made to contact such secured creditors or their attorneys and any appointed committee or, if no committee has been appointed, the twenty (20) largest unsecured creditors with regard to the application to use cash collateral:

    •  The Debtor has emailed a copy of this motion to:

Automotive Finance Corporation
Andrew T. Kight - akight@jhklegal.com

AXLE Funding
Attn: Alan Padfield - abp@padfieldstout.com

Lendbuzz & Shamrock
Attn: Devin Devaney – kevin.devaney@lendbuzz.com

NextGear
Kevin Pay – Kevin.pay@coxautoinc.com

Samson Funding

7

Steven Vagnone – steven@reliefbusinessconsulting.com

Newtek Small Business Finance Inc.
Nile Evans – nevans@newtekone.com

By First Class Mail to:

Small Business Administration
409 3rd St SW.
Washington DC 20416

- No committee has yet been appointed in this case.

- A copy of this Motion has been emailed (to the extent possible) and transmitted via US Mail (in the absence of email) to each of the Debtor's twenty (20) largest unsecured creditors.

c. The nature of the emergency requiring an *ex parte* order:

- The Debtor's payroll is weekly. Without immediate access to cash collateral generated from the sale of inventory, the Debtor will be unable to pay its modest payroll on a weekly basis. The Debtor would miss several payroll deadlines if it must wait until a final order on cash collateral. Also, some of its critical utilities, insurance premiums, and other ordinary and necessary operating expenses would become overdue. Being unable to pay its employees, utilities and suppliers when due would jeopardize those relationships and could cause the Debtor to have to abruptly cease operations.

d. The total dollar amount of cash collateral use requested to be authorized:

- In accordance with the Budget, the sum of $2,795,000 will be generated from service and the sale of used car inventory during the Use Period. Total expenses during the period will be $2,788,817, leaving a positive cash flow of $6,183 and an ending cash balance of $56,183.

e. A description of the adequate protection which will be provided to such secured creditor:

- The budget reflects no decrease in the secured creditors' cash collateral (except to the extent there is a corresponding reduction it debt when the floor plan lenders' cars are sold) over the Use Period.

- as adequate protection for any diminution occurring subsequent to the Petition Date in the value of the secured creditors' interests in cash collateral, and to the extent of such diminution (the "<u>Diminution in Value</u>"), including without limitation such diminution as may be caused by the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or the Debtor's use of cash collateral, the Debtor proposes to grant the secured creditors valid, binding, enforceable and automatically perfected liens (the "<u>Adequate Protection Lien</u>") on all of the Debtor's after acquired cash collateral arising post-petition to the same extent and in the same priority as such lien existed prior to the Petition Date, notwithstanding the provisions of section 552 of the Bankruptcy Code.

24. Attached as Exhibit C is the *Affidavit of Carlos Amaral In Support of Debtor's Ex Parte Motion for Interim Authority to Use Cash Collateral* required by LBR 4001-2(b).

25. The proposed cash collateral order does not include any of the provisions required to be highlighted pursuant to LBR 4001-2(c).

V. **<u>Waiver of Memorandum of Law</u>**

26. Based upon the legal authority cited herein and the lack of any novel issues of law, the Debtor respectfully requests that the requirement of Local Bankruptcy Rule 7102(3) be waived.

VI. **<u>No Prior Request</u>**

27. No prior request for the relief sought in this Motion has been made to this or any other court.

VII. **<u>Relief Requested</u>**

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form of the proposed interim order filed herewith, granting the Debtor the following relief:

a. Authority to use the cash collateral of the Secured Creditors, on an interim basis during the Use Period in accordance with the Budget;

      b.      Schedule a final hearing on this Motion in such a fashion that the Debtor can provide at least fourteen (14) days' notice as required by Bankruptcy Rule 4001-b(2);

      c.      At the Final Hearing, continue the authorization to use cash collateral as has been provided on an interim basis through the Use Period; and

      d.      Grant such other and further relief as may be appropriate and just.

Respectfully submitted,

**Beato Auto Sales, Inc.,**
By its Attorney,

Dated: February 15, 2023

/s/ Peter N. Tamposi
Peter N. Tamposi, BNH 04931

Tamposi Law Group
159 Main Street
Nashua, New Hampshire 03060
(Tel) (603) 204-5513
(Fax) (603) 204-5515
Email: peter@thetamposilawgroup.com